# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VORCELIA OLIPHANT-MACHER, | ) | 3:23-CV-1450 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PETER MACHER et al., | ) | |
| *Defendants*. | ) | September 27, 2024 |

## RULING AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Sarala V. Nagala, United States District Judge.

*Pro se* Plaintiff Vorcelia Oliphant-Macher has sued her estranged husband Peter Macher, as well as Judge Maureen Price-Boreland[1] of the Connecticut Superior Court, who presided over marriage dissolution proceedings between the couple, and the City of New Haven Housing Authority ("Housing Authority"), for what she claims is a long-running conspiracy to "impoverish of money and valuables and disenfranchise the plaintiff and her family of their rights before the courts on every level." *See* Second Am. Compl., ECF No. 18 at 2. The operative complaint contains allegations suggesting that Defendants have harmed Plaintiff by exhibiting bias in state court proceedings, preventing her from collecting appropriate rental income on her properties, poisoning her dog, and contributing to unexplained or mysterious medical issues and harm to Plaintiff and her family members. Plaintiff purports to bring claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, numerous federal criminal statutes (such as 18 U.S.C. § 241, 18 U.S.C. § 242, 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1347), civil rights statutes (42 U.S.C. § 1983 and § 1985), a tax venue statute (28

---

[1] Plaintiff names the Honorable Maureen "Boreland-Price" as a defendant in the case caption, and interchangeably refers to her as Judge Boreland-Price and Judge Price-Boreland. The Court refers to this defendant as Judge Price-Boreland. *See* Superior Court Judges, State of Conn., Jud. Branch, https://www.jud.ct.gov/judsearch/judsup.asp.

U.S.C. § 1396), a patent infringement statute (35 U.S.C. § 271), as well as state statutory and common law claims.  The relief Plaintiff seeks is not clear, though she references financial damage caused by Defendants.  *See* ECF No. 18 at 3–4.

Defendants have each moved to dismiss the Second Amended Complaint ("SAC"), in its entirety.  *See* J. Price-Boreland Mot. to Dismiss, ECF No. 24; Macher Mot. to Dismiss, ECF No. 38; Housing Authority Mot. to Dismiss, ECF No. 53.  Plaintiff has opposed the motions to dismiss. For the reasons described below, the Court agrees with Defendants that Plaintiff's federal claims against Judge Price-Boreland are barred by the Eleventh Amendment and judicial immunity and that all claims are, in any event, not plausibly pleaded.  As a result, no federal claims remain in this suit, and the Court declines to exercise supplemental jurisdiction over any state law claims. The motions to dismiss are thus GRANTED.

Plaintiff has also sought leave to file a Third Amended Complaint ("TAC"), which Defendants have opposed.  *See* Pl.'s Mot. to Amend, ECF No. 55.  Finally, Plaintiff has also filed a proposed Fourth Amended Complaint.  *See* Proposed Fourth Am. Compl., ECF No. 65.  Because Plaintiff's proposed amendments are futile, Plaintiff's motion to amend is DENIED.  No further leave to amend will be granted, for the reasons expressed below.

I.     **BACKGROUND**

A.  Factual Background

The SAC contains the following allegations, which are accepted as true for purposes of this motion.  *Ashcroft v. Iqbal*, 55 U.S. 662, 678 (2009).  While the SAC is not a model of clarity, the Court summarizes as follows.

Defendant Macher is Plaintiff's estranged husband, from whom she is seeking divorce.  *Id.* at 3.  Defendant Judge Price-Boreland was the judge presiding over the divorce proceedings

between Plaintiff and Defendant Macher.  *Id.*[2]  The Housing Authority is alleged to have denied Plaintiff "justified rents" and ignored her "complaints of a difficult tenant."  *Id.* at 4.  Plaintiff claims that these actors, acting on behalf of the State of Connecticut, have conspired together to injure her in myriad ways.  *Id.* at 3–4.

Plaintiff was employed by the Department of Transportation (DOT).  *Id.* at 5.  During her time at DOT, Plaintiff befriended Defendant Macher.  *Id.* at 8.  Plaintiff alleges he coerced her into marriage so that he could gain entry and access to her "for the undoing of the plaintiff and her family."  *Id.* at 8.  This included allegedly being involved in the loss of Plaintiff's fertility, *see id.* at 8–10, the suspicious death of Plaintiff's uncle, *see id.* at 14, Plaintiff's insurance difficulties and difficulties obtaining medical care, *see id.* at 16–18, the "loot[ing] [of] rare books" from her mother's home, *see id.* at 18–19, and the poisoning of her dog, *see id.* at 20–21, among other things.  *See also id.* at 21–23 (describing car accidents), 23–24 (describing the "inordinate death" of Plaintiff's family and friends mostly from cancer, the timing of which was "ominous" in that they were around the time Plaintiff sought a restraining order against Defendant Macher), 24–25 (tax issues), 25–26 (stolen patent ideas).

The instant case primarily "stems from" the divorce action against Defendant Macher, over which Defendant Price-Boreland presided.  *Id.* at 6.  Plaintiff filed a motion to recuse Defendant Price-Boreland due to her bias against Plaintiff.  *Id.*  For instance, Judge Price-Boreland "circumvent[ed] proper procedure" by using a restraining order hearing to schedule the hearing for the dissolution of marriage proceeding over Plaintiff's objection, and had Plaintiff removed from the hearing by state marshals.  *Id.* at 12.  Later, Plaintiff's motion for a restraining order against Defendant Macher was denied.  *Id.* at 13.

---

[2] On June 10, 2024, the marriage dissolution case was transferred to a different judge of the Connecticut Superior Court.  *See* Letter Notice, ECF No. 78.

Separately, Plaintiff alleges that the Housing Authority has conspired to impoverish her by interfering with Plaintiff's rental property business. *Id.* at 26. For instance, the Housing Authority has conducted "late biased inspections" and not addressed severe issues with Plaintiff's tenants. *Id.* at 26–27.

       B. <u>Procedural History</u>

Plaintiff filed her original complaint in this action on November 1, 2023. *See* Compl., ECF No. 1. The case was assigned to Judge Omar A. Williams, who *sua sponte* dismissed the case due to the failure to state a cognizable federal claim, including under the RICO statute. *See* Order, ECF No. 8.

Following this dismissal, Plaintiff sought reconsideration of the Court's order. *See* Mot. for Relief, ECF No. 9. This motion explained that Judge Williams, while serving as an attorney in a public defender office, may have represented Plaintiff's brother. *See* Order, ECF No. 10. In an abundance of caution, Judge Williams recused himself from this case, *see id.*, which was then transferred to the undersigned. After transfer, this Court granted Plaintiff's request to reopen the case to allow her to file an Amended Complaint to attempt to remedy the deficiencies identified in Judge Williams's order of dismissal. *See* Order, ECF No. 12. After filing the first Amended Complaint, *see* ECF No. 16, Plaintiff then promptly filed the Second Amended Complaint, *see* ECF No. 18, which became the operative complaint in this matter, *see* Order, ECF No. 22. In the course of motion to dismiss briefing, Plaintiff also filed a motion for leave to amend and the proposed TAC, *see* ECF Nos. 54–55, as well as a proposed Fourth Amended Complaint, *see* ECF No. 65, which the Court said it would not consider at the time due to the pending motions to dismiss and motion to amend, *see* Order, ECF No. 67.

## II.    LEGAL STANDARD FOR MOTIONS TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a case for lack of subject matter jurisdiction.  A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*,

550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. It is true that Courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted).  But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Fowlkes*, 790 F.3d at 387 (citing *Twombly*, 550 U.S. at 570).

### III.    MOTIONS TO DISMISS

For the reasons described below, Defendants' motions to dismiss are GRANTED.

#### A.    Federal Claims

Plaintiff invokes this Court's federal question jurisdiction, as all parties are alleged to be citizens of Connecticut.  *See* ECF No. 18 at 1–3.  Accordingly, this Court analyzes first whether Plaintiff has brought a cognizable federal claim.  As discussed below, it concludes she has not.

##### 1.  Judicial Immunity

The Court considers first whether Plaintiff may assert her claims against Judge Price-Boreland, who presided over the dissolution action between Plaintiff and Defendant Macher in state court.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions," *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991)), whether they are sued in their individual or official capacities,

*Szymonik v. Connecticut*, No. 3:18-CV-263 (MPS), 2019 WL 203117, at *7 (D. Conn. Jan. 15, 2019), *aff'd*, 807 F. App'x 97 (2d Cir. 2020) (summary order). *See also Aron v. Becker*, 48 F. Supp. 3d 347, 363 n.8 (N.D.N.Y. 2014) ("Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities . . . . The Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities.") (citation omitted). Judicial immunity "is conferred in order to insure 'that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Bliven*, 579 F.3d at 209 (citation omitted). Therefore, "even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* Rather, judicial immunity can be overcome only if the conduct alleged is not taken in the judge's official capacity or if the actions, "though judicial in nature," are "taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12. Acts "arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven*, 579 F.3d at 210.

Moreover, 42 U.S.C. § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." But declaratory relief is ordinarily available by appealing the judge's order. *LeDuc v. Tilley*, No. 3:05-cv-157 (MRK), 2005 WL 1475334, at *7 (D. Conn. June 22, 2005).

Plaintiff sues Judge Price-Boreland in her official and individual capacities, though it is not clear what relief she seeks against the Judge. *See* ECF No. 18 at 1. The Court therefore analyzes all three potential types of relief: monetary damages, injunctive relief, and declaratory relief.

With respect to Plaintiff's claims against Judge Price-Boreland in her individual capacity, all claims for monetary damages are barred by judicial immunity.  It is clear that all of Plaintiff's allegations against Judge Price-Boreland "relate[] to her presiding over judicial proceedings."  *See* J. Price-Boreland Br., ECF No. 24-1 at 2.  Plaintiff's allegations against Judge Price-Boreland make up only a small portion of the sprawling SAC, but she alleges in relevant part that Judge Price-Boreland's conduct demonstrated a "strong appearance of bias" towards Plaintiff by, for instance, scheduling "exparte [sic] hearings with the defendant when, for no reason, the plaintiff is made to leave the court by the marshal," dismissing the case for "conflicting dates of hearing," and denying Plaintiff's motions.  *See* ECF No. 18 at 6, 12–13.  These actions are clearly judicial in nature, regardless of Plaintiff's allegations of bias, as they occurred during the course of Judge Price-Boreland's management and adjudication of the dissolution case between Plaintiff and Defendant Macher.  *See Bliven*, 579 F.3d at 210; *see also Brady v. Ostrager*, 834 F. App'x 616 (2d Cir. 2020) (summary order) (failure to adjudicate defenses, ignoring evidence, and erroneous jury instructions were "actions . . . taken in [judicial defendant's] capacity as a presiding judge and therefore were 'judicial in nature'") (citation omitted); *Parent v. New York*, 786 F. Supp. 2d 516, 533 (N.D.N.Y. 2011) (noting informal and *ex parte* proceedings within a judge's jurisdiction are considered judicial), *aff'd*, 485 F. App'x 500 (2d Cir. 2012).  There is no allegation that these actions were taken in the absence of jurisdiction.  Judge Price-Boreland is therefore entitled to absolute judicial immunity related to claims brought against her in her individual capacity for monetary damages.

Further, to the extent Plaintiff may be seeking injunctive relief against Judge Price-Boreland in her individual capacity, Section 1983 bars such a request.  Plaintiff has not alleged Judge Price-Boreland has violated a declaratory decree or that declaratory relief was unavailable

to Plaintiff.  Moreover, even were injunctive relief a possibility, to the extent Plaintiff is seeking injunctive relief in the form of an order that Judge Price-Boreland take certain actions in the divorce proceeding, such requests would likely be moot given that Judge Price-Boreland no longer presides over the dissolution case.  *See* ECF No. 78; *see also Oliphant-Macher v. Macher*, Docket No. 138, Case No. NNH-FA23-5060418-S (Transfer Order).

Separately, Plaintiff's claims against Judge Price-Boreland in her official capacity for damages are barred by the Eleventh Amendment.  The Eleventh Amendment provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const., Amend. XI.  "Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity."  *Green v. Mansour*, 474 U.S. 64, 68 (1985).  Eleventh Amendment immunity applies, in appropriate circumstances, to state officials acting in their official capacities.  *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).  As the Eleventh Amendment "restricts the judicial power under Article III," *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996), a motion to dismiss on the basis of sovereign immunity under the Eleventh Amendment

is properly brought under Rule 12(b)(1).  *Long Island Pure Water Ltd. v. Cuomo*, 375 F. Supp. 3d 209, 215 (E.D.N.Y. 2019).[3]

Neither of the exceptions to Eleventh Amendment immunity apply here.  First, Judge Price-Boreland has not consented to this suit.  Second, Congress has not unequivocally expressed an intent to abrogate Eleventh Amendment immunity under the federal statutes under which Plaintiffs have brought claims.  *See* ECF No. 24-1 at 11–12 (collecting cases).

In addition to the consent and abrogation exceptions, there is also "a well-known exception to [Eleventh Amendment immunity]—established by the Supreme Court in *Ex parte Young* and its progeny—by which suits for prospective relief against an individual acting in his official capacity may be brought to end an ongoing violation of federal law."  *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020).  This exception does not apply to Plaintiff's complaint, however, because the complaint cannot fairly be read to encompass an ongoing violation of federal law.  The relief Plaintiff is seeking does not appear prospective in any way, as her allegations relate to only past actions taken by Judge Price-Boreland.  *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (recognizing that *Ex Parte Young* exception "does not normally permit federal courts to issue injunctions against state-court judges").

In sum, because Plaintiff's claims against Judge Price-Boreland are barred by either judicial immunity or the Eleventh Amendment, they must all be dismissed.  As to the official

---

[3] As this Court has previously recognized, "[n]either the Second Circuit nor the Supreme Court has definitively determined whether the Eleventh Amendment is to be understood as a bar to subject matter jurisdiction or is 'more appropriately viewed as an affirmative defense.'" *Mallison v. Conn. Office of Early Childhood*, 634 F. Supp. 3d 21, 29 n.2 (D. Conn. 2022) (quoting *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 50 n. 1 (2d Cir. 2020)). *See also Allco Finance Ltd. v. Roisman*, No. 22-2726, 2023 WL 4571965, at *1 (2d Cir. July 18, 2023) (summary order). The Court believes that the opening phrase of the Eleventh Amendment, which provides that the "judicial power of the United States shall not be construed to extend" to certain suits, suggests that the Amendment limits the subject matter jurisdiction of the Court.  Recognizing the uncertainty, however, the Court dismisses Plaintiff's official capacity claims against Judge Price-Boreland *without* prejudice.  *See Katz v. Donna Karan Company, L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (recognizing that dismissals based on lack of subject matter jurisdiction must be without prejudice).

capacity claims for damages, the Court lacks subject matter jurisdiction, so the dismissal is without prejudice.[4]  *See supra,* n.3.

### 2.  *Failure to State a Claim*

In addition, the Court finds that Plaintiff's federal claims must be dismissed for failure to state a claim upon which relief can be granted.

At the outset, the Court notes that much of Plaintiff's SAC is "factually frivolous."  *See Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (noting a factually frivolous claim is one where the "sufficiently well-pleaded facts are 'clearly baseless'—that is . . . they are 'fanciful,' 'fantastic,' or 'delusional'") (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)).  While the events Plaintiff describes are not necessarily fanciful or delusional in themselves, the idea that each negative event in her life (including the death of her dog, various car accidents, and property damage) can be traced back to a State-sponsored conspiracy against her, which is the crux of the SAC, plainly is.  At the very least, Plaintiff has not provided any facts from which the Court could draw a reasonable inference of conspiracy, as she regularly bases her allegations solely on her own beliefs.  *See, e.g.*, ECF No. 18 at 15 ("Plaintiff believes" her brother was set up), 19 (Plaintiff "strongly believe[s]" her attic key was provided to others by Defendant Macher), 21 (Plaintiff "strongly suspect[s]" poisoning was involved in her dog's death).

Even aside from this issue, however, Plaintiff does not state cognizable federal claims.  First, any attempts to pursue federal criminal claims are unavailing, as these statutes do not create private rights of action enforceable by Plaintiff.  *See Vidurek v. Koskinen*, 789 F. App'x 889, 894 (2d Cir. 2019) (summary order) (affirming dismissal due to lack of private right of action under 18 U.S.C. §§ 241, 242 and 1341); *Nath v. Select Portfolio Servicing, Inc.*, 732 F. App'x 85, 87 (2d

---

[4] In light of this holding, the Court need not reach Judge Price-Boreland's arguments regarding abstention under the domestic relations doctrine, *Younger v. Harris*, 401 U.S. 37 (1971), and *O'Shea v. Littleton*, 414 U.S. 488 (1974).

Cir. 2018) (summary order) (noting there is no private right of action under federal criminal mail and wire fraud statutes); *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order) (noting federal criminal claims were "not cognizable, as federal criminal statutes do not provide private causes of action"); *Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015) ("Federal criminal statutes do not provide private rights of action.").

Moreover, any civil RICO claim must be dismissed. In order to establish a civil RICO claim, a plaintiff must show: "(1) a violation of 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (citation omitted) (cleaned up). In turn, to plead a violation of 18 U.S.C. § 1962, a plaintiff must show: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (citation omitted). Plaintiff plainly cannot meet even the second element of an enterprise, an issue first identified by Judge Williams. *See* ECF No. 8. With respect to whether Defendants acted as an enterprise—defined as "a group of persons associated together for a common purpose of engaging in a course of conduct," *see United States v. Turkette*, 452 U.S. 576, 583 (1981))—the only thing connecting them to each other is Plaintiff's threadbare allegations and assumptions that they are acting in concert. In other words, there is no factual basis in the SAC upon which to infer that Plaintiff's estranged husband, a state court judge, and a municipal agency were acting in concert to Plaintiff's detriment. *See Maguire v. Ameriprise Fin. Servs., LLC*, No. 3:22-CV-0128 (VAB), 2022 WL 1718038, at *7 (D. Conn. May 27, 2022) (dismissing complaint which was "wholly devoid of allegations that Defendants functioned 'as a continuing unit' or were an 'entity separate and apart' from their alleged activities") (citation omitted). Plaintiff also fails to plausibly plead that Defendants engaged in any "racketeering activity," which is specifically defined in 18 U.S.C. § 1961 to include several serious federal

crimes, including murder, kidnaping, gambling, robbery, and others.  Although Plaintiff alludes to the deaths of various members of her family as being caused by Defendants, her allegations of causal connection are not plausible, as she alleges most of these individuals died of cancer.  *See* ECF No. 18 at 23.  Nor has she alleged any other plausible racketeering activity.

The Court notes that the only claims Plaintiff clearly asserts against the Housing Authority are her civil RICO claims.  *See* ECF No. 18 at 26–28 (citing to 28 U.S.C. § 1961(4), a postjudgment interest statute, rather than 18 U.S.C. § 1961(4), which the Court presumes is a scrivener's error).  To the extent other claims are meant to be asserted against the Housing Authority for blocking rent increases and conducting late inspections, it is not clear that these claims arise under federal law, *see Galland v. Margules*, No. 05CIV5639 (DC), 2005 WL 1981568, at *2 (S.D.N.Y. Aug. 17, 2005) (noting court did not have "federal question subject matter jurisdiction over plaintiff's housing law claims"), *aff'd*, 191 F. App'x 23 (2d Cir. 2006).  In any event, these conclusory allegations are insufficient to state claims for a violation of Plaintiff's civil rights under 42 U.S.C. §§ 1983 and 1985 as there are no facts suggesting which "rights, privileges, or immunities secured by the Constitution and laws" that Plaintiff may have been deprived of by the actions of the Housing Authority, or that the Housing Authority was part of any conspiracy to deprive Plaintiff of constitutional rights.  *See DeSouza v. Taiman*, No. 3:16-CV-00490 (MPS), 2017 WL 3444672, at *5 (D. Conn. Aug. 10, 2017) (noting that conspiracies under § 1985 require a "meeting of the minds, such that defendant entered into an agreement . . . to achieve an unlawful end") (citation omitted) (cleaned up).

Moreover, Plaintiff's claims against the Housing Authority would be subject to dismissal due to the fact that they are improperly joined with Plaintiff's purported claims against Judge Price-Boreland and Defendant Macher.  Federal Rule of Civil Procedure 20(a)(2) permits joinder of

multiple defendants in one action if:  first, "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences"; and second, "any question of law or fact common to all defendants will arise in the action."  The Court may "drop a party" or "sever any claim against a party" that it finds to be improperly joined.  Fed. R. Civ. P. 21.  While allegations "that the joined defendants conspired or acted jointly" may suffice to meet the "same transaction" requirement in some instances, *see Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151, 154 (D. Conn. 2008) (internal quotation marks and citation omitted), Plaintiff's conspiracy allegations are not well-pled. As such, the Court does not find that her claims arise out of the same transaction, or that there is a "substantial overlap in questions of law or fact across the claims" arising out of the marriage dissolution action and against the Housing Authority.  *See Ardolf v. Weber*, 332 F.R.D. 467, 479 (S.D.N.Y. 2019) (internal quotation marks and citation omitted).[5]

Likewise, to the extent Plaintiff pleads § 1983 and § 1985 claims against Defendant Macher, these are also dismissed for failure to state a claim.  As a private individual, Defendant Macher is generally not a proper § 1983 defendant.  *See Sheehy*, 335 F. App'x at 103.  That he "once held local political office," as Plaintiff alleges, *see* ECF No. 18 at 3, or that he was formerly employed by DOT, is not sufficient in the context of Plaintiff's allegations to suggest that his actions were conducted under color of state law.  *See* 42 U.S.C. § 1983; *see also DeSouza*, 2017 WL 3444672, at *4 (dismissing § 1983 claim where plaintiff provided "merely conclusory allegations" suggesting defendant was a state actor).  In addition, as discussed above, Plaintiff has not described with any specificity which of her rights she believes have been violated, nor plausibly pled that Defendant Macher was a member of any conspiracy, as required for her claim under 42

---

[5] To the extent Plaintiff seeks to assert her claims against the Housing Authority, she would be free to do so in a separate action.

U.S.C. § 1985 or any conspiracy claim under § 1983.  This, combined with the fact that the connections between Defendant Macher and Plaintiff's harms rest entirely on conclusory and speculative allegations, necessitates dismissal of Plaintiff's claims against Defendant Macher.

Accordingly, the Court hereby DISMISSES all of Plaintiff's federal claims.

### B.  State Claims and Supplemental Jurisdiction

Having dismissed the federal law causes of action, the Court declines to exercise supplemental jurisdiction over any state law claims.  *See* 28 U.S.C. § 1367(c)(3).  Retaining jurisdiction over Plaintiff's state law claims would not promote the values of economy, convenience, fairness, or comity, given that this case is at an early stage and that Plaintiff's allegations are generally frivolous.  *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018).

Accordingly, Defendants' motions to dismiss are GRANTED.

### IV.   **MOTION FOR LEAVE TO AMEND**

The Court next considers whether to grant Plaintiff's motion for leave to amend, and concludes that amendment should not be permitted because the proposed Third and Fourth Amended Complaints are futile.

Federal Rule of Civil Procedure 15(a)(1) first provides a liberal standard in which "a plaintiff may freely amend her pleadings ... as of right without court permission."  *Id.*  Outside of these enumerated circumstances, however, a plaintiff seeking to amend must either move the court for leave or obtain the opposing party's written consent.  Fed. R. Civ. P. 15(a)(2).  Rule 15(a)(2) is a lenient standard, under which "[t]he court should freely give leave [to amend] when justice so requires."  *Id.*

Nonetheless, courts will deny a proposed amendment under Rule 15(a)(2) "upon a showing of 'undue delay, bad faith, dilatory motive, or futility.'" *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). An amendment is futile if it "could not withstand a motion to dismiss" under Rule 12(b)(6). *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164–65 (2d Cir. 2015) (citation omitted). "Put differently, a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, it does not 'plausibly give rise to an entitlement to relief.'" *Brach Fam. Found., Inc. v. AXA Equitable Life Ins. Co.*, No. 16-CV-740 (JMF), 2018 WL 1274238, at *1 (S.D.N.Y. Mar. 9, 2018) (quoting *Iqbal*, 556 U.S. at 679). "The party opposing a motion to amend bears the burden of establishing that amendment would be futile." *Id.*

The Court finds that, here, the proposed amendments would be futile, and it therefore denies Plaintiff's motion for leave to amend. The Court first notes that the proposed TAC mirrors the SAC in important respects—it sues the same Defendants; asserts claims under the same causes of action, including RICO and various criminal statutes; and it maintains the existence of a State-run conspiracy against Plaintiff, though with some new allegations, *see, e.g.*, ECF No. 54 at 18 (Plaintiff believes she was "followed out of the country"), 23 (describing health issues Plaintiff and her mother suffer due to conspiracy).

With respect to Judge Price-Boreland, Plaintiff's allegations in the proposed TAC are substantively identical and relate entirely to actions taken during the dissolution proceeding; therefore, amendment is futile given the judicial immunity issues outlined above. *See Brady*, 834 F. App'x at 619 (finding no error in district court's denial of leave to amend based on judicial immunity, given that "better pleading will not cure" the issue) (citation omitted); *see also Jordan v. New York State Dep't of Lab.*, 811 F. App'x 58, 59–60 (2d Cir. 2020) (summary order)

(recognizing leave to amend would be futile due to Eleventh Amendment immunity). In addition, with respect to the Housing Authority, although Plaintiff adds new allegations related to her tax and insurance struggles as a homeowner and possible foreclosure, *see* ECF No. 54 at 12–13, 20, the same issues identified above persist in that Plaintiff does not appear to have a valid federal cause of action against the Housing Authority, nor one that arises from the same transaction or occurrence as her allegations against Judge Price-Boreland and Defendant Macher. *See Bank of New York v. Consiglio*, No. 3:19-CV-01161 (KAD), 2019 WL 3491507, at *1 (D. Conn. Aug. 1, 2019) (noting it is "well settled that judgments of foreclosure are fundamentally matters of state law") (citation omitted) (cleaned up); *Galland*, 2005 WL 1981568, at *2 (noting court did not have "federal question subject matter jurisdiction over plaintiff's housing law claims"). As to Defendant Macher, Plaintiff's amendments also do not cure the plausibility issues identified above, despite the addition of new allegations related to the harms suffered by Plaintiff and her family.[6]

Accordingly, Plaintiff's motion seeking leave to amend to file the proposed TAC is DENIED.

Plaintiff has also filed a proposed Fourth Amended Complaint ("FAC"), *see* ECF No. 65. In the interest of completeness, the Court holds that the Fourth Amended Complaint would, likewise, be futile. The FAC generally suffers from the same defects identified above and, to the extent it adds new allegations, remains largely conclusory or fanciful. *See, e.g.*, *id.* at 42 (inheritances thwarted by fraud, which is a matter "too sensitive to disclose in this document"), 46–47 (allegations relating to jewelry business set up by Defendant Macher using Plaintiff's idea).

---

[6] In addition, the proposed TAC is once again difficult to follow, and includes over 450 pages of exhibits. This would make it a "prime candidate for dismissal pursuant to Rule 8," *see Cunningham v. Lupis*, No. 3:21-CV-00273 (SALM), 2022 WL 136463, at *4 (D. Conn. Jan. 14, 2022), which requires a "short and plain statement of the claim[s]," Fed. R. Civ. P. 8(a)(1).

All told, then, Plaintiff has submitted a total of five complaints in this matter, all of which suffer from similar defects.

While the Court is mindful that a "*pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [she] has a valid claim," *see Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation marks and citation omitted), the Court finds denial of leave to amend to be warranted here.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (where the problems with the plaintiff's causes of action are "substantive" and would not be cured by better pleading, denial of leave to amend is appropriate).  Judge Price-Boreland is immune from suit, and the Court cannot envision that Plaintiff could state a valid conspiracy or RICO claim against Defendant Macher and the New Haven Housing Authority.  Plaintiff's five complaints have not even cured the issues identified by the original dismissal order in this case.  *See* ECF No. 8 (dismissing case as frivolous and for failing to state a claim under RICO).  Under these circumstances, Plaintiff need not be afforded an opportunity to amend.  *See Xu*, 166 F. Supp. 3d at 210 (denying plaintiff's motion to amend "[b]ecause a liberal reading of the Amended Complaint does not give any indication that a valid claim might be stated").

## V.      CONCLUSION

For the reasons described herein, Defendants' motions to dismiss, ECF Nos. 24, 38, and 53, are GRANTED and Plaintiff's motion for leave to amend, ECF No. 55, is DENIED.  The Clerk is directed to close this case.


**SO ORDERED** at Hartford, Connecticut, this 27th day of September, 2024.


    */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE